**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | |
|---|---|
| DAVID HAYDEN, ) | CASE NO. 3:20-CV-02263-JJH |
| ) | |
| Plaintiff, ) | JUDGE JEFFREY J. HELMICK |
| ) | UNITED STATES DISTRICT JUDGE |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, ) | CARMEN E. HENDERSON |
| ) | |
| Defendant, ) | **REPORT & RECOMMENDATION** |
| ) | |

**I. Introduction**

Plaintiff, David Hayden ("Hayden" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On June 7, 2018, Claimant filed an application for DIB alleging a disability onset date of May 19, 2017. (ECF No. 12, PageID #: 102, 299). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 102). On August 13, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12, PageID #: 124). On September 25, 2019, the ALJ issued a written decision finding Claimant was not disabled.

(ECF No. 12, PageID #: 99). The ALJ's decision became final on August 3, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID #: 93).

On October 7, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 15, 16, & 18). Claimant asserts the following issues for review:

> (1) Whether the administrative law judge erred in her evaluation of treating physician opinion where the opinion is supported by and consistent with the record, and the administrative law judge failed to build a logical bridge between the record and her analysis of persuasiveness?
>
> (2) Whether the administrative law judge erred in her evaluation of pain and other symptoms where Mr. Hayden's experience of symptoms is consistent with the objective record and his activities do not undermine a limitation to occasional use of the hands?

(ECF No. 15 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized Claimant's statements regarding his symptoms:

> The claimant was involved in a motorcycle accident in March 2009, and sustained fractures to his pelvic, bilateral wrists, and left shoulder, which were treated surgically (B1A). The record indicates the claimant underwent surgery in August 2010, and his condition steadily improved thereafter (B1A/13).
>
> However, since that time, the claimant reports that around his alleged onset date, his condition has progressively deteriorated. With respect to his symptoms, the claimant reports that he remains unable to work due to persistent pain in his hips, wrists, and left shoulder. The claimant reports experiencing swelling and throbbing in his left leg, which is helped by elevation of his left leg, compression stockings, and heat therapy (B1F/65, dated March 13, 2018). Hearing testimony indicated the claimant requires use of compression socks that remain at thigh level (Testimony). The claimant testified that he has pain if he sits, stands, or walks too long, and he also gets short of breath (Testimony). The claimant indicated

> that he continues to have significant swelling in his left lower extremity and he is required to elevate his legs almost all day. Hearing testimony indicated that he spends most of his day sitting with his legs elevated at the waist level or more (Testimony). The claimant reported that his ability to engage in repetitive motion, sit, stand, and walk distances is limited (B3E/2). He testified that he is still able to ride his motorcycle but only for short distances, no long hauls.

(ECF No. 12, PageID #: 107-108).

### B. Relevant Medical Evidence

In early 2017, Claimant began to experience renewed difficulties with his hands. January 29, 2017 x-rays of the right hand showed arthritis and an old injury to the CMC (carpometacarpal) joint of the right thumb. (ECF No. 12, PageID #: 400-401). On September 25, 2017, Claimant presented to Linda Speer, M.D., with complaints of his right finger "locking up", numbness in his hands, sharp elbow pain, weakened grip strength, and left leg pain and swelling. (ECF No. 12, PageID #: 466). Dr. Speer noted that Claimant had edema in his left leg but that he was able to walk normally. (ECF No. 12, PageID #: 466). Dr. Speer assessed Claimant with acquired trigger finger, lateral epicondylitis of the right elbow, and history of deep vein thrombosis. (ECF No. 12, PageID #: 466-467). Dr. Speer recommended Claimant follow up with an orthopedist for evaluation of his finger. (ECF No. 12, PageID #: 466-467). At his subsequent treatment visits with Dr. Speer between October 2017 and March 2018, Claimant continued to exhibit normal gait and station despite edema in his lower extremities. (ECF No. 12, PageID #: 450-451, 454, 463). Dr. Speer's treatment recommendations throughout this period included prescription medication, knee high compression stockings, and home reconditioning exercises. (ECF No. 12, PageID #: 450-451, 454, 463). On March 13, 2018, Claimant presented to Dr. Speer to go over the results of his echocardiogram (which were "essentially normal") and to get a disability form completed. (ECF No. 12, PageID #: 450).

Claimant began treating March 15, 2018 with A. Mustapha, M.D., an orthopedist, for his complaints of pain and numbness in his hands and right ring finger locking. (ECF No. 12, PageID #: 445-448). An electrodiagnostic test of his upper extremities found moderate right-sided and mild left-sided carpal tunnel syndrome and no evidence of upper extremity radiculopathy. (ECF No. 12, PageID #: 445). Dr. Mustapha's examinations of Claimant's hands and fingers in March and May 2018 revealed that he had normal range of motion and no evidence of deformities, atrophy, or swelling. (ECF No. 12, PageID #: 431, 442). On May 3, 2018, Dr. Mustapha noted that Claimant should "[continue] with conservative treatment as his symptoms are improving with night time [sic] bracing and he does not desire to seek surgical intervention at this time." (ECF No. 12, PageID #: 431).

### C. Opinion Evidence at Issue

On May 18, 2018, Claimant's treating physician, Dr. Linda Speer, completed a medical questionnaire assessing Claimant's residual functional capacity. (ECF No. 12, PageID #: 475-481). Dr. Speer stated that Claimant had moderately severe chronic edema of the left leg up to the knee. Because of this impairment, Dr. Speer opined that Claimant could rarely lift 20 pounds, occasionally lift 10 pounds, and frequently lift less than 10 pounds. Additionally, Dr. Speer opined that Claimant could walk two blocks without rest and could stand for 30 minutes at one time, up to two hours a day. Dr. Speer opined that Claimant could sit for one hour at a time, but for an unlimited amount of time during an eight-hour workday with his left leg elevated. Dr. Speer noted that Claimant should elevate the leg 18-24 inches for 90 percent of the workday. Dr. Speer also indicated that Claimant would need to be able to shift positions at will from sitting, standing, and walking and may need to take one 15-minute unscheduled break a day. Dr. Speer also opined that Claimant could tolerate moderate stress but that his impairments were likely to produce good days and bad days, which could cause him to be absent more than four days per month.

The ALJ found Dr. Speer's opinion not persuasive and explained that it was inconsistent

with her exam findings and the remainder of the record. (ECF No. 12, PageID #: 111).

**IV.     The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: residuals from remote fracture of the pelvis, bilateral wrists, and left shoulder; cervical degenerative disc disease, bilateral carpal tunnel syndrome; hypertension; right scaphotrapeziotrapezoidal (STT) osteoarthritis; bilateral carpal tunnel syndrome; thumb carpometacarpal joint osteoarthritis; and obesity (20 CFR 404.1520(c)).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant: must have the ability to alternate between sitting and standing, at his option, every 30 minutes for 1-2 minutes so long as he is not off task or has to leave the vicinity of the workstation. He can occasionally climb ladders, ropes, or scaffolds and crawl and frequently climb ramps and stairs, balance, crouch, kneel, and stoop. With the bilateral upper extremities, he can frequently handle and finger. With the non-dominant left upper extremity, he can frequently reach overhead. With the bilateral lower extremities, he can occasionally push and/or pull or operate foot controls. He can occasionally work around unprotected heights.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 19, 2017, through the date of this decision (20 CFR 404.1520(g)).

**V. Law & Analysis**

   **A. Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has

6

the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

C. Discussion

Claimant raises two issues on appeal: 1) whether the administrative law judge erred in her evaluation of Claimant's treating physician's opinion; and 2) whether the administrative law judge erred in her evaluation of Claimant's pain and other symptoms regarding the use of his hands.

**1. The ALJ properly evaluated the opinion of Dr. Speer.**

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017.[1] *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include:

---

[1] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

On May 18, 2018, Claimant's treating physician, Dr. Speer, completed a medical questionnaire assessing Claimant's residual functional capacity. (ECF No. 12, PageID #: 475-481). Dr. Speer stated that Claimant had moderately severe chronic edema of the left leg up to the knee. Because of this impairment, Dr. Speer opined that Claimant could rarely lift 20 pounds, occasionally lift 10 pounds, and frequently lift less than 10 pounds. Additionally, Dr. Speer opined that Claimant could walk two blocks without rest and could stand for 30 minutes at one time, up to two hours a day. Dr. Speer opined that Claimant could sit for one hour at a time, but for an unlimited amount of time with his left leg elevated during an eight-hour workday. Dr. Speer noted that Claimant should elevate the leg 18-24 inches for 90 percent of the workday. Dr. Speer also indicated that Claimant would need to be able to shift positions at will from sitting, standing, and walking and may need to take one 15-minute unscheduled break a day. Dr. Speer also opined that Claimant could tolerate moderate stress but that his impairments were likely to produce good days and bad days, which could cause him to be absent more than four days per month.

The ALJ found Dr. Speer's opinion unpersuasive and explained:

> I do not find [Dr. Speer's] conclusions to be persuasive because they are not consistent with her own finding upon examination, as indicated at B1F and B5F. They are not supported by the claimant's request for shorter compression stocking, his medication use, or his activities of daily living, particularly relating to his reports that he had a job driving and still enjoys riding motorcycles. This is grossly inconsistent with Dr. Speer's assertions that the claimant needed to elevate his legs 90 percent of an 8-hour workday.

8

(ECF No. 12, PageID #: 111).

Claimant argues that the ALJ erred by finding Dr. Speer's opinion unpersuasive because, contrary to the ALJ's explanation, Dr. Speer's opinion was supported by her treatment notes and consistent with other evidence in the record. (ECF No. 15 at 10). Additionally, Claimant argues that the ALJ failed to "build a logical bridge" between her analysis and the evidence as a whole. (ECF No. 15 at 10). The Commissioner argues that the ALJ "appropriately applied the new regulations and rejected Dr. Speer's dire conclusions about [Claimant's] functional limitations because they were unsupported by the benign objective clinical findings that she (and others) obtained (Tr. 19)" (ECF No. 16 at 10) and because it was inconsistent with Claimant's treatment history and admitted level of activity (Tr. 19)" (ECF No. 16 at 11). The Commissioner characterizes Claimant's argument as an attempt to have this Court impermissibly reweigh the evidence. (ECF No. 16 at 14). In his reply, Claimant states that "[t]he issue here [ ] is not simply a 'substantial evidence' question, but whether the administrative law judge properly followed legal standards." (ECF No. 18 at 1). Claimant argues that by failing to build a logical bridge between the evidence of record and her analysis of persuasiveness, the ALJ "failed to follow the proper legal criteria"; thus, remand is required regardless of whether substantial evidence supports the outcome. (ECF No. 18 at 3-5).

The ALJ applied proper legal standards in evaluating Dr. Speer's opinion. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers*, 486 F.3d at 241. The ALJ properly declined to give any specific weight (including controlling weight) to any medical opinion or prior administrative findings. (ECF No. 12, PageID #: 111); 20 C.F.R. § 404.1520c(a). Instead, the ALJ complied with the new regulations when she explained that she found Dr. Speer's opinion unpersuasive in light of inconsistent evidence and specifically described the evidence she found inconsistent with Dr. Speer's opinion.

9

(ECF No. 12, PageID #: 111); 20 C.F.R. § 404.1520c(a), (b). This explanation fit well within the regulatory framework. It also provided an accurate and logical bridge to allow us to understand the ALJ's reasoning. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011); 20 C.F.R. § 404.1520c.

Substantial evidence also supported the ALJ's finding that Dr. Speer's opinion was unpersuasive because it was inconsistent with other evidence in the record. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. § 404.1520c; *Rogers*, 486 F.3d at 241. A reasonable mind could find that the significant physical limitations described in Dr. Speer's opinion were inconsistent with: (1) her own repeated observations of Claimant's normal gait and station (ECF No. 12, PageID #: 451, 457; (2) her own observations that Claimant ambulated normally (ECF No. 12, PageID #: 450, 454 ("limp resolved"), 463; *but see* PageID #: 460 (ambulated with a limp)); (3) Claimant's repeated denial of experiencing swelling, fatigue, joint and muscle pain, and gait difficulties with Drs. Kriegel and Haines (ECF No. 12, PageID #:405 (denies weakness or unsteady gait), 434 (same), 437 (same), 489 (no difficulties with balance or pain), 496 (denies weakness or unsteady gait), 514 (no muscle aches, no muscle weakness, no numbness, no fatigue, no edema), 594 (denies weakness or unsteady gait), 613 (no edema, no muscle aches, no muscle weakness, no joint paint, no swelling of the extremities); (4) other medical observations of normal gait and ambulation (ECF No. 12, PageID #: 489 (ambulation was unremarkable, sensory and motor coordination were also unremarkable)) ; (5) Claimant's conservative treatment history, confined to medication and compression stockings; and (6) Claimant's ability to engage in daily activities, such as working as an auto parts delivery driver, ride motorcycle (for short periods), care for himself independently, and perform household chores (ECF No. 12, PageID #: 489, 143, 164). Accordingly, substantial evidence supports the ALJ's finding. *Biestek*, 139 S. Ct. at 1154 ("[substantial evidence] means

only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (citation omitted)). Even if evidence would have supported a finding that Dr. Speer's opinion was persuasive – and even if this Court might have agreed with Dr. Speer on de novo review – this Court is not permitted to decide the facts anew or re-weigh the evidence. *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476-77 (6th Cir. 2003).

Moreover, the ALJ did not fail to consider the limitations caused by Claimant's edema – the basis for Dr. Speer's opinion. Instead, she specifically addressed Claimant's edema and stated that although the evidence did not support the need to frequently elevate his lower extremities as opined by Dr. Speer but that the RFC accommodated the impairment by providing him with the ability to alternate between sitting and standing every 30 minutes:

> While the record supports the claimant has symptoms of edema in his left lower extremity, the residual functional capacity is not based upon the claimant being symptoms free, but is based upon his ability to do work activities on a sustained basis, despite limitations from his impairment. The claimant's alleged need to frequently elevate his lower extremities at waist level due to his edema is not consistent with the totality of the evidence. However, the residual functional capacity accommodates the claimant's symptoms of edema and obesity, but providing the claimant with the ability to alternate between sitting and standing, at his option, every 30 minutes for one to two minutes. The claimant is also limited to occasional pushing and pulling of his bilateral lower extremities and occasional operation of foot controls. The environmental limitation that he can occasional [sic] work around unprotected heights.

(ECF No. 12, PageID #: 112).

Because the ALJ's finding meets the low threshold for evidentiary support, it fell within the Commissioner's "zone of choice" and this Court cannot second-guess the ALJ's findings. *Mullen*, 800 F.2d at 545; *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783.

Accordingly, this Court recommends that the ALJ's finding that Dr. Speer's opinion was not persuasive be affirmed.

**2. The ALJ properly evaluated Claimant's symptom testimony.**

In his second issue, Claimant argues that the ALJ erred in her evaluation of Claimant's symptom testimony because his testimony was consistent with the objective record and his activities of daily living do not undermine a limitation to occasional use of the hands. (ECF No. 15 at 16). The Commissioner argues that "the ALJ's rationale for discounting [Claimant's] claims of disabling symptoms was consistent with applicable legal authority and easily cleared the 'not high' threshold for evidentiary sufficiency." (ECF No. 16 at 18).

A claimant's statements as to pain or other symptoms will not alone establish that she is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when the pain forms a basis of the claimant's disability claim. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also* SSR 16-3p, 2017 WL 5180304, at *3-*4 (Oct. 25, 2017). First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Rogers*, 486 F.3d at 247. The ALJ here determined that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (ECF No. 12, PageID #: 108). Accordingly, the first step is met.

Next, the ALJ must evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. SSR 16-3p lists the factors relevant to the ALJ's determination at this step, which include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; the type, dosage, effectiveness and side effects of any medication the

12

individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain, and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *7-*8; *see also Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994) (citing 20 C.F.R. § 1529(a), (c)). An ALJ is not required to expressly address all the factors listed in SSR 16-3p but should sufficiently articulate her assessment of the evidence to assure the court that she considered all relevant evidence. *Cross v. Commissioner*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005). When a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must assess the claimant's symptom testimony "based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247; *see also Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 400 (6th Cir. 2016). To the extent that the ALJ's findings are based on an assessment of the claimant's symptom testimony, those findings are accorded great weight and deference. *Walters*, 127 F.3d at 531.

Claimant asserts that his symptoms are supported by the objective medical evidence. Claimant testified that he had difficulty using his hands more than occasionally. (ECF No. 15 at 15). He asserts that the following objective medical evidence supports this: "X-rays of the right hand at that time showed arthritis and an old injury to the CMC (carpometacarpal) joint of the right thumb. Tr. 308-09. An EMG was consistent with moderate right carpal tunnel syndrome and mild left. Tr. 349." (ECF No. 15 at 16). The ALJ noted and considered these findings (ECF No. 12, PageID #: 109) and found that Claimant had severe impairments of his upper extremities. However, a medical diagnosis of an impairment does not address the limiting effects of an impairment, nor does the ALJ's finding of a severe impairment. The evaluation of a claimant's

13

subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ").

Here, the ALJ found that Claimant suffered from severe impairments of his upper extremities: "residuals from remote fracture of [ ] bilateral wrists, and left shoulder; cervical degenerative disc disease, bilateral carpal tunnel syndrome; [ ]; right scaphotrapeziotrapezoidal (STT) osteoarthritis; bilateral carpal tunnel syndrome; [and] thumb carpometacarpal joint osteoarthritis[.]" (ECF No. 12, PageID #: 105). The ALJ here determined that, although Claimant's severe impairments could reasonably be expected to cause his symptoms, the statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence of record. (ECF No. 12, PageID #: 108). The ALJ noted that the record lacked evidence of atrophy, swelling, weakness, impaired range of motion, or other abnormalities that would be consistent with his claims of disabling upper extremity limitations. (ECF No. 12, PageID #: 110). The ALJ noted repeated medical observations that Claimant had normal range of motion in his hands, without any evidence of atrophy, swelling, or deformities. (ECF No. 12, PageID #: 110 ("Dr. Mustapha observed the claimant had normal range of motions of both hands, with no evidence of deformities, atrophy, swelling or erythema (B1F/46). The claimant exhibited normal active range of motion of both thumbs and fingers (B1F/46). The claimant had normal sensation sensory examination with normal bilateral ulnar nerve distribution, radial nerve distribution, and median nerve distribution with negative bilateral Tinel's signs and negative carpal compression testing (B1F/46).")). Additionally, the ALJ noted the objective medical findings and concluded that they did not support greater restrictions:

> An electromyography study dated May 20, 2018, showed the claimant had moderate right carpal tunnel syndrome and mild left

14

> carpal tunnel syndrome (B1F/46). X-rays of his cervical spine, dated March 22, 2018, showed degenerative changes at C4-C5, with prominent osteophyte formation as well as C5-C6 to a lesser degree (B1F/46). Radiographs of his right wrist showed mild scaphotrapeziotrapezoidal (STT) and moderate thumb carpometacarpal (CMC) joint osteoarthritis, with no acute findings, though it could not exclude a small dorsal chip fracture (B1F/15). Imaging studies of his cervical spine showed straightening of the normal cervical lordosis with osteophyte formation at C4-C5 (B1F/5-6, dated March 22, 2018). The claimant's soft tissue was within normal limits and there was no evidence of fracture or subluxation (B1F/5- 6, dated March 22, 2018). These positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.

(ECF No 12, PageID #: 109).

The ALJ also considered Claimant's treatment modalities and found that his conservative treatments did not support greater restrictions. (ECF No. 12, PageID #: 109 ("The claimant pursued a conservative course of treatment for all of his impairments. As for his bilateral hand and wrist complaints, the records shows in March 2018, the claimant followed up with A. Mustapha, M.D., an orthopaedic specialist, with complaints of bilateral upper extremity numbness and tingling (B1F). His treatment for his bilateral hand pain consisted of use of braces (B1F/60).")). Moreover, the ALJ noted that Claimant's symptoms were improving with the use of conservative treatment. (ECF No. 12, PageID #: 109 ("By May 2018, Dr. Mustapha recommended the claimant continue with conservative treatment as his symptoms were improving with nighttime bracing and the claimant did not want to seek surgical intervention at that time (B1F/47).")). The ALJ examined the objective clinical findings and properly found that they discounted Claimant's subjective claims of disabling symptoms and limitations in his upper extremities. (ECF No. 12, PageID #: 108-110). *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (the ALJ properly rejected the claimant's complaints of disabling pain where there were no

15

neurological defects and no evidence of muscle atrophy, which was "typically associated with severe pain").

The ALJ considered Claimant's daily activities and found they supported the RFC determination:

> In September 2018, the claimant reported that he presently work [sic] as an auto-parts delivery driver, which indicates some ability to maintain a license for commercial driving (B4F/2). Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. Notably, the ability to drive without incident or medical restrictions is significant, in that it shows that his edema has not prevented him from using an accelerator or a brake. Further, he has maintained his driver's license and is able to understand traffic sign, and maintain enough focus and concentration to navigate through traffic.
>
> The claimant also enjoys riding his motorcycle (B4F/3, dated September 10, 2018). The claimant reports no difficulties attending to his self-care, such as dressing, bathing, eating, or toileting and he has no difficulties managing his own medications or finances, as well as complete household chores (B4F/3). Therefore, the activities of daily living support the determination that he is able to work at his assigned residual functional capacity

(ECF No. 12, PageID #: 111).

Finally, no medical opinion supports Claimant's suggested limitation to occasional use of his hands. For example, Claimant's treating physician gave no opinion as to any limitations to Claimant's upper extremities. (*See* ECF No. 12, PageID #: 481 (When asked to describe limitations to Claimant's ability to use his arms, hands, or fingers, Dr. Speer responded "uncertain".)).

Having reviewed the medical evidence of Claimant's symptoms, the ALJ determined that Claimant's statements of his symptoms were only partially consistent with the evidence. (ECF No. 12, PageID #: 112). The ALJ explicitly stated that she

> took into consideration the entirety of the medical record, the

> opinion evidence, and the statements of the claimant at hearing and found in disability and functions reports. The claimant's allegations of disabling symptoms, including pain and fatigue, were all considered in the light most favorable to the claimant. The limitation to a reduced range of light with occasional climbing of ladders, ropes, or scaffolds, frequent climbing of ramps and stairs, balancing, crouching, kneeling, and stooping, frequent handling and fingering, and frequent reaching overhead considers the claimant's residuals from his remote pelvis, bilateral wrist, and left shoulder fractures, his cervical degenerative disc disease, and bilateral carpal tunnel syndrome.

(ECF No. 12, PageID #: 112). She further explained that "[a]lthough the evidence establishes underlying medical conditions capable of producing some limitations, the substantial evidence of record does not confirm disabling limitations arising from these impairments, nor does it support a conclusion that the objective determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling limitations. In view of all of the factors discussed above, the limitations on the claimant's capacities, which were described earlier in this decision are considered warranted, but no greater or additional limitations are justified." (ECF No. 12, PageID #: 112).

The ALJ's decision satisfies the Court that the ALJ considered all the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's finding regarding Claimant's upper extremity limitations. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: December 1, 2021

                                                                                                           s/ *Carmen E. Henderson*
                                                                                                           CARMEN E. HENDERSON
                                                                                                           U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

      Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).